MARY A. MOFFATT *et al. v.* CHARLES R. SCHENCK *et al.**

(*Knoxville.*   September Term, 1918.)

1. **ADVERSE POSSESSION.** Color of title. Void tax deed.

A tax deed under which defendants claimed the land in suit, even
  if void, constituted color of title in them.   (*Post, pp.* 312, 313.)

Case cited and approved:   Iron Co. v. Schwoon, 124 Tenn., 176.

2. **LIMITATION OF ACTIONS.** Removal of disabilities of married
  women.  Effect on saving clause of disability statute.

Acts 1913, chapter 26, removing disabilities of married women, did
  not repeal saving clause of Shannon's Code, section 4448, in favor
  of married women, as to commencement of actions after removal
  of their disability, and complainant married woman had the right
  to sue the adverse possessors of land, under the saving clause of
  section 4448, within three years after chapter 26 took effect, Janu-
  ary 1, 1914, and, not having done so, the suit, not filed until May
  24, 1917, is barred.   (*Post, pp.* 314-316.)

Acts cited and construed:   Acts 1913, ch. 26;   Acts 1901, ch. 15.

Case cited and approved:   Jones et al. v. Coal Creek Mining &
  Mfg. Co., 133 Tenn., 160.

Code cited and construed:   Sec. 4448(S.).

3. **HUSBAND AND WIFE.** Removal of disabilities of married women.
  Application of statute.

Acts 1913, chapter 26, removing the disabilities of married women
  and giving them the right to bind themselves personally, to sue
  and to be sued, etc., does not apply only to property, real and
  personal, in the possession of such women.   (*Post, pp.* 316, 317.)

Case cited and approved:   McIrvin v. Lincoln Memorial University,
  138 Tenn., 260.

---

*On the question of statutory removal of disability of coverture
as repealing exception in statute of limitations in favor of married
women, see note in L. R. A., 1918C, 193.

- FROM CUMBERLAND.

Appeal from the Chancery Court of Cumberland County.—Hon. F. T. Fancher, Special Chancellor. ·

J. A. Monroe, for appellants.

Ward R. Case, for appellees.

Mr. Justice Hall delivered the opinion of the Court.

The bill in this cause was filed by complainants in the chancery court of Cumberland county on May 24, 1917, seeking to recover of the defendants the title and possession of a certain tract of land known as Fentress County Entry 456, on which grant No. 5243 was issued to John B. McCormack on May 25, 1837.

Complainants claim title to said land through the original grantee, John B. McCormack, they being the heirs at law and next of kin of Mary H. Blake, to whom the said McCormack conveyed said land by deed bearing date of February 17, 1838, and which was recorded in the register's office of Fentress county on April 3, 1838. Mary H. Blake died August 11, 1885.

The defendants claim title to said land through Charles C. Schenck, father of the defendant Charles R. Schenck, who purchased said land at a tax sale had under a judgment rendered in the circuit court of Fentress county on August 24, 1882. By this judgment title was divested out of Mary H. Blake and vested in

Charles C. Schenck, who was put in actual possession of the land on September 13, 1882, by the sheriff of Fentress county under a writ of possession issued upon said judgment.

Defendants insist that said judgment gave them at least color of title. They also assert title under a tax deed based upon said sale executed on August 8, 1884.

It is contended by complainants that this tax sale and deed are void, and did not constitute color of title in the defendants. It is claimed by defendants that they have been in open, notorious, continuous adverse possession of said land from the date they were put in possession under said tax sale judgment to the date of the filing of the bill in this cause, and they rely upon such adverse possession to perfect their title to said land.

It is insisted by complainants that this alleged continuous adverse possession on the part of the defendants under said tax title has been broken by the following interruptions, and was not therefore continuous and exclusive, and cannot be counted for the time said interruptions existed.

First. That in December, 1885, J. S. Watson, who claimed to be the owner of grant No. 11741, which is a younger grant than that issued to John B. McCormack for the land in controversy, and which interlaps with and covers the western portion of the land embraced in grant No. 5243, brought an ejectment suit in the circuit court of Fentress county against S. S. Perkins and Anderson Ashburn, defendants' tenants, to recover that portion covered by the interlap of the Watson grant. It appears that Watson was successful in this

suit, final decree having been entered December 7, 1894, and a writ of possession issued in favor of Watson and against Perkins and Ashburn under said decree, but its execution was enjoined by Schenck and his associates by a bill filed in the chancery court at Jamestown on February 27, 1895. Schenck and his associates, who were the landlords of Perkins and Ashburn, were not made parties to the suit of *Watson* v. *Perkins and Ashburn.*

It appears that the suit of Schenck and others against Watson to enjoin the execution of the writ of possession issued in favor of Watson and against Perkins and Ashburn resulted in a decree for the complainants, and Watson was never put in possession of said land.

It is insisted by the complainants that the decree rendered in the cause of *Watson* v. *Perkins and Ashburn* had the effect of breaking the continuity of defendants' possession, notwithstanding Watson never was in possession, but only obtained a decree against the tenants of Schenck and his associates adjudging that he was entitled to possession.

Second. It is insisted that the defendants' possession was again broken on January 1, 1890, when Charles C. Schenck leased the land to one W. H. Neely, who, it appears, without the knowledge of Schenck, and while the land was occupied by Schenck's tenant, had previously, on November 13, 1899, taken a lease from J. S. Watson for the land covered by the Watson grant No. 11741. It appears that Watson has no actual possession of said land, and that Neely did not go into possession of it himself, but subleased it to one Jerre Hall, telling Hall that he was acting for Watson. About the time

Hall went into actual possession he went to Schenck and procured a lease from him, and thereafter held possession under the Schenck lease instead of the Watson lease. Watson, learning that Hall was holding under Schenck, procured Neely to bring an action of forcible entry and detainer against Hall. This suit was first tried before a justice of the peace on January 8, 1891, and resulted in a judgment in favor of Neely, from which Hall appealed. Neely gave bond for rents, and, under the statute, a writ of possession issued, and Hall was dispossessed, and one Bill Padgett was placed in possession of the land by Neely and Watson. In the circuit court there was a judgment in favor of Hall, and Neely appealed to the supreme court, where, on March 12, 1892, the judgment in favor of Hall was affirmed, and he was restored to possession as Schenck's tenant soon thereafter.

Third. That in 1891, while the suit of *Neely* v. *Hall* was pending, and while Schenck was in fact out of possession of said land, one William Mitchell appeared and claimed to be the only heir at law of Mary H. Blake. Schenck and his associates, believing that Mitchell was the only heir at law of Mary H. Blake, compromised his claim with him by conveying to him one-fourth of the land in controversy and retaining three-fourths. Thereafter, on June 26, 1891, said Mitchell gave Charles C. Schenck a power of attorney, in which Schenck was authorized to take possession of said land for him and in his name, and to bring suits to recover the same, if necessary, to establish and make good his title to said land, and thereafter dispose of the same in accordance with the terms of a joint agreement entered into con-

temporaneously with the execution of said power of attorney between the said Mitchell and Schenck. Thereafter, on April 5, 1893, said Mitchell conveyed his interest in said land to the defendant Charles R. Schenck. This deed contains the following recital:

"Transfer and convey unto Charles R. Schenck . . . all my right, title and interest . . . grant No. 5243 . . . sold by said John B. McCormack to Mary H. Blake, who was afterwards Mary Mitchell, and of whom I am the sole surviving heir."

It is insisted by complainants that the taking of this power of attorney by Schenck from Mitchell had the effect of surrendering and abandoning all previous possession of said land by Schenck in favor of Mitchell, and that, therefore, the period of adverse possession by Schenck prior to the date of the power of attorney cannot be counted in defendants' favor.

Fourth. That in 1895 or 1896 the Union Land Coal & Coke Company and the Tennessee Union Land Development Company held four separate and distinct one-acre possessions and inclosures on said land, which were cleared about the year 1895 or 1896, and were kept up and cultivated continuously each year until August 1, 1899, on which date said companies executed a deed to the defendants Charles R. Schenck and A. B. Bradford, conveying to them the land in controversy. It is insisted by complainants that these possessions held by the Union Land Coal & Coke Company and the Tennessee Union Land Development Company had the effect of impounding and neutralizing the defendants' possession of said land.

On the trial of the cause the complainants, who are married women, were allowed to amend their bill and plead and rely on their disabilities of coverture, but their husbands were not made parties complainants, and the cause proceeded to trial as to said married women in their own right.

It is insisted by the complainants that, by reason of the interruptions hereinbefore mentioned, the defendants had no valid adverse possession of said land until after the disabilities of said married women occurred, and that the defendants' plea of the statute of limitations cannot avail them; that the said Mary H. Blake, complainants' ancestor, died on August 11, 1885, on which date said land descended to her heirs at law, and those being under disability of coverture are as follows:

Complainant Anna H. B. Howe, owner of an undivided one-third interest, and the wife of William Read Howe, has been under continuous disability of coverture since the death of her father, John L. Blake, on October 10, 1899; that the complainant Elizabeth M. Mason was married in 1865; Julia C. Averill was married in 1886, and Mary A. Moffat was married in 1891, since which time they have all been under the disability of coverture, and jointly owning an undivided one-sixth interest in said land; that Mary L. Block, daughter of Louise R. Tyler, and granddaughter of the said Mary H. Blake, was married to John W. Block in the year 1879, and has been under disability of coverture since that date, and is entitled to an undivided one-twelfth interest in said land.

The cause was heard before special chancellor, F. T. Fancher, on June 20, 1918, who held that the defendants

had had more than seven years' continuous, peaceable, adverse, open, and exclusive possession of said land next preceding the filing of the bill, and that complainants' right of action was barred for the reason that they did not bring their suit within three years from January 1, 1914, on which date chapter 26 of the Acts of 1913 went into effect, and their bill was therefore dismissed. From the decree of the chancellor dismissing their bill complainants have appealed to this court, and have assigned errors.

Owing to our view of the cause, which is the same as that taken by the chancellor, it will not be necessary to determine whether the interruptions occurring in the defendants' possession prior to 1899 had the effect of breaking the continuity of such possession. The tax deed under which the defendants claim, even if void, would constitute color of title in them. *Iron Co. v. Schwoon,* 124 Tenn., 176, 135 S. W., 785.

The undisputed evidence shows that, since the execution of the deed by the Union Land Coal & Coke Company and the Tennessee Union Land Development Company, to defendants, on August 1, 1899, they have had continuous, open, exclusive, and uninterrupted possession of said land down to the present time. The possessions that were on said land at the date of the execution of said deed by the Union Land Coal & Coke Company and the Tennessee Union Land Development Company have been extended by the defendants and new possessions and new inclosures have been erected on said land by them. There have been two new fields cleared on the land by the complainants since the execution of said deed by said companies. These clearings

consist of about forty acres of land, upon which buildings have been erected, and said possessions have been occupied and cultivated continuously by the tenants of the defendants on down to the date of the filing of the bill in this cause.

J. M. Hall testified that he took possession of said land as the tenant of the defendants in the year 1890; that there was then a possession on said land consisting of about twenty-five acres, and that since that time there has been about forty additional acres cleared by the tenants of defendants, and that these latter possessions have been kept up continuously and cultivated each year.

Hugh Hall testified that he moved on the land in 1904, as the tenant of the defendants, and has been there seventeen years; that there are now three distinct possessions upon said land, the old place and two new ones; that the two new ones have been made since he went on the land, and have been kept up continuously until the present time and cultivated each year.

J. W. Hall testified that he moved on the land in controversy in 1897, and that the old possession, as well as the new ones, have been kept up continuously since that time, and that the tenants of the defendants have cleared and fenced something near forty acres since he moved on said land. The evidence shows that said new improvements or possessions have been made on the land by defendants' tenants since the year 1899, and these possessions have been occupied and the lands cultivated continuously without interruption on the part of any adverse claimants.

By chapter 26 of the Acts of 1913 it is provided:

"That married women be, and are, hereby fully emancipated from all disability on account of coverture, and the common law as to the disabilities of married women and its effect on the rights of property of the wife, is totally abrogated, and marriage shall not impose any disability or incapacity on a woman as to the ownership, acquisition, or disposition of property of any sort, or as to her capacity to make contracts and do all acts in reference to property which she could lawfully do if she were not married; but every woman now married, or hereafter to be married, shall have the same capacity to acquire, hold, manage, control, use, enjoy, and dispose of, all property, real and personal, in possession, and to make any contract in reference to it, and to bind herself personally, and to sue and be sued with all the rights and incidents thereof, as if she were not married."

By section 4448 of Shannon's Code it is provided:

"If the person entitled to commence an action is, at the time the cause of action accrued, either (1) within the age of twenty-one years, or (2) of unsound mind, or (3) a married woman, or (4) beyond the limits of the United States and the territories thereof, such person, or the (their) representatives and privies, as the case may be, may commence the action, after the removal of such disability, within the time of limitation for the particular cause of action, unless it exceed three years, and in that case within three years from the removal of such disability."

Chapter 26 of the Acts of 1913, by which the disabilities of married women were clearly removed, went into

Moffat v. Schenck.

effect on January 1, 1914. The bill in the suit at bar was not filed until May 24, 1917. It is therefore clear that more than three years had elapsed between the date of its filing and the date when chapter 26 of the Acts of 1913 took effect. The complainants, however, take the position that the Act of 1913 removed, not only the disability of coverture from married women, but likewise cut off and removed the saving clause provided by section 4448 of Shannon's Code above quoted, giving them three years within which to sue after the removal of such disability. It is therefore insisted by the complainants that said saving clause having been suddenly cut off, the complainants had seven years after their disabilities were removed within which to bring suit. The case of *Jones et al.* v. *Coal Creek Mining & Manufacturing Co.*, reported in 133 Tenn., 160, 180 S. W., 179, is cited in support of this contention.

We do not think the holding in that case is controlling in the case at bar. The opinion in that case dealt with chapter 15 of the Acts of 1901, abolishing all exceptions to statutes limiting commencement of suits and actions in favor of persons beyond the limits of the United States and territories thereof. It was held that said statute removed the saving clause provided by section 4448 of Shannon's Code for the benefit of such persons, and that a right to sue could not be suddenly cut off, but a reasonable time must be given. The court held in that case that a reasonable time was not given short of the period of limitation, and in order to give the parties their day in court it was held that they had their full period of seven years within which to sue.

Chapter 26 of the Acts of 1913 does not undertake to repeal the saving clause given by section 4448 of Shannon's Code in favor of married women. It only removes the disabilities of married women, leaving the saving clause of the statute still in effect. That the complainants had the right to sue under the saving clause provided by section 4448 of Shannon's Code cannot be questioned, and, not having done so within the three years provided by the saving clause, it must be held that they are barred.

We cannot assent to the additional contention made by complainants that the Act of 1913, removing the disabilities of married women, only applies to property, real and personal in the possession of such women. The act expressly gives the right to a married woman to bind herself personally, "and to sue and be sued with all the rights and incidents thereof, as if she were not married."

It was expressly held in *McIrvin v. Lincoln Memorial University,* 138 Tenn., 260, 197 S. W., 862, L. R. A., 1918C, 191, that chapter 26 of the Acts of 1913, removed the exemption which otherwise would have excluded married women from the operation of the statute of limitations. That was a suit to recover for personal injuries commenced more than one year from the accrual of the cause of action. The injuries were sustained after the date upon which chapter 26 of the Acts of 1913 went into effect. It was contended by the complainant that the three years' saving clause provided by section 4448 of Shannon's Code applied, and by the defendant that it did not. It was held that the right of action was barred after one year. The only

Moffat v. Schenck.

difference between that case and the case at bar is that the cause of action in that case accrued after January 1, 1914, and in the suit at bar it accrued a number of years before.

It results that the decree of the chancellor will be affirmed, with costs.